UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) Cause No. 1:13-cr-00160-JMS-DKL |
| ERIC L. BARNES, | ) |
| Defendant. | ) |

**STIPULATED STATEMENT OF FACTS**

The United States of America, by counsel, Joseph H. Hogsett, United States Attorney for the Southern District of Indiana, Steven D. DeBrota, Senior Litigation Counsel, and Jennifer A. Whitfield and David P. Kehoe, Senior Trial Attorneys, Environmental Crimes Section, Environment and Natural Resources Division, and Defendant Eric L. Barnes, in person and by counsel, Charles Hayes, submit the following agreed stipulation of facts:

At all time relevant to this matter:

1. U.S. Inspection Service, Inc. ("USIS") was a non-destructive testing (NDT) company that, among other things, conducted NDT of pipeline welds. NDT is any test method that examines an object, material, or system without impairing its future use. Eric L. Barnes was employed by USIS as a certified level II radiographer from in or about July 2007 through February 2009.

2. There are three different levels of radiograph technician certifications. A certified level II technician is an engineer or experienced technician who is: (1) able to set up and calibrate testing equipment, conduct inspection according to codes and standards; (2) interpret, evaluate and document testing results; (3) compile work instructions for level I technicians; and (4) supervise and train level I technicians. In addition to testing methods, they must be familiar with applicable codes and standards and have some knowledge of the manufacture and service of tested products.

3. From in or about June 2008 through October 2008, Eric L. Barnes was assigned by USIS to conduct NDT of pipe welds at an interstate natural gas pipeline compressor station in Bainbridge, Indiana, and was the lead level II radiograph technician onsite.

4. The NDT process at the Bainbridge compressor station involved taking an x-ray of the weld to confirm the integrity of the weld. Each pipe weld had a number. One piece of x-ray film was loaded into a cassette which was wrapped around the weld. An x-ray was taken of the weld and the film was "flashed" with a record number which associated the film with a particular weld. After the level II radiograph technician interpreted the film, the weld number and whether the x-ray was acceptable or rejected, along with other technical data about the process, was recorded on a reader sheet. The level II radiograph technician who interpreted the x-ray would then sign the reader

sheet as the interpreter, and the completed reader sheets and x-rays were given to the pipeline construction company for review to determine the integrity of the pipe welds.

5. As the lead level II radiograph technician onsite, Eric L. Barnes was responsible for certifying the authenticity and truthfulness of each reader sheet. On several occasions, Mr. Barnes knowingly and willfully signed the reader sheets in his capacity as the interpreter of the film even though he knew the document contained false information because he had not confirmed the legitimacy of each x-ray as indicated on the reader sheet, namely that an x-ray of each pipe weld had been taken and was acceptable. On these occasions, two or more pieces of film had been loaded into an x-ray film cassette. Each piece of film was flashed with a separate record number to make it appear that the film was an x-ray of different pipe welds when, in fact, only one weld had actually been x-rayed.

Information about the reader sheets that contained false information about NDT of pipe welds at the Bainbridge compressor station is summarized below:

| Date on Reader Sheet | False Information in the Reader Sheet |
|---|---|
| 08/25/08 | The reader sheet states that welds 522 through 526 had been x-rayed and were acceptable when, in truth and fact, the radiograph for welds 524 and 525 were duplicates and one of the two welds not been x-rayed |

3

| 08/26/08 | The reader sheet states that welds 527 through 529 had been x-rayed and were acceptable when, in truth and fact, the radiographs for welds 526, 527 & 528 were duplicates and two of the three welds had not been x-rayed |
| --- | --- |
| 09/06/08 | The reader sheet states that welds 582 through 585 had been x-rayed and were acceptable when, in truth and fact, the radiographs for welds 582 & 583 were the same and one of the two welds had not been x-rayed. |
| 09/08/08 | The reader sheet states that welds 587 through 590 had been x-rayed and were acceptable when, in truth and fact, the radiographs for welds 587 and 588 were duplicates and one of the two welds had not been x-rayed. |
| 10/02/08 | The reader sheet states that welds 778 and 779 had been x-rayed and were acceptable when, in truth and fact, the radiographs for welds 778 and 779 are the same and one of the two welds had not been x-rayed. |

6. On the dates indicated above Eric L. Barnes knowingly and willing made and caused the making of a material false writing or document in a matter within the jurisdiction of the United States Department of Transportation, Pipeline and Hazardous Material Safety Administration, an executive branch of the Government of the United States.

7. As a result of the falsifications by Mr. Barnes, USIS had to retest several welds. The parties agree that the remediation cost associated with the falsifications is approximate $24,000.

JOSEPH H. HOGSETT
United States Attorney
Southern District of Indiana

8/20/13
DATE

Josh Minkler
First Assistant

8/20/13
DATE

Steven D. DeBrota
Senior Litigation Counsel

8/20/13
DATE

Jennifer A. Whitfield
David P. Kehoe
Senior Trial Attorneys
Environment and Natural Resources Division
Environmental Crimes Section

7-29-13
DATE

ERIC L. BARNES
Defendant

7/29/13
DATE

Charles Hayes
Attorney for Defendant

5